Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IAN HUGHES,<br><br>    Plaintiff,<br><br>v.<br><br>TRILLIUM THERAPEUTICS INC., LUKE BESHAR, MICHAEL KAMARCK, CATHERINE MACKEY, SCOTT MYERS, PAOLO PUCCI, JAN SKVARKA, HELEN TAYTON-MARTIN, and PAUL WALKER,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Ian Hughes ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is an action against Trillium Therapeutics Inc. ("Trillium" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9,

1

in connection with the proposed acquisition (the "Proposed Transaction") of Trillium by Pfizer Inc. ("Pfizer") and its wholly-owned indirect subsidiary, PF Argentum Acquisition ULC ("Purchaser").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.[1]

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Trillium common stock.

---

[1] For example, the Company reportedly participated in conferences in New York City in recent years.

7. Defendant Trillium is a clinical stage immuno-oncology company that develops therapies for the treatment of cancer. The Company is incorporated under the laws of the Province of British Columbia, Canada. The Company's common stock trades on the NASDAQ under the ticker symbol, "TRIL."

8. Defendant Luke Beshar ("Beshar") is a director of the Company.

9. Defendant Michael Kamarck ("Kamarck") is a director of the Company.

10. Defendant Catherine Mackey ("Mackey") is a director of the Company.

11. Defendant Scott Myers ("Myers") is a director of the Company.

12. Defendant Paolo Pucci ("Pucci") is a director of the Company.

13. Defendant Jan Skvarka ("Skvarka") is President, Chief Executive Officer ("CEO"), and a director of the Company.

14. Defendant Helen Tayton-Martin ("Tayton-Martin") is a director of the Company.

15. Defendant Paul Walker ("Walker") is a director of the Company.

16. Defendants Beshar, Kamarck, Mackey, Myers, Pucci, Skvarka, Tayton-Martin, and Walker are collectively referred to herein as the "Individual Defendants."

17. Defendants Trillium and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

18. On August 23, 2021, Pfizer and Trillium announced that they had entered into a definitive agreement pursuant to which Pfizer would acquire Trillium for $18.50 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**Pfizer to Acquire Trillium Therapeutics Inc.**

August 23, 2021 06:45 ET | Source: Trillium Therapeutics Inc.

*Proposed acquisition strengthens Pfizer's category leadership in Oncology with addition of next-generation, investigational immuno-therapeutics for hematological malignancies*

*Expands innovative pipeline, potentially enhancing growth in 2026-2030 and beyond*

*Pfizer to host analyst and investor call at 10:00 a.m. ET today with Pfizer Oncology executives*

NEW YORK and CAMBRIDGE, Mass., Aug. 23, 2021 (GLOBE NEWSWIRE) -- Pfizer Inc. (NYSE: PFE) and Trillium Therapeutics Inc. (NASDAQ/TSX: TRIL) today announced that the companies have entered into a definitive agreement under which Pfizer will acquire Trillium, a clinical stage immuno-oncology company developing innovative therapies for the treatment of cancer. Under the terms of the agreement, Pfizer will acquire all outstanding shares of Trillium not already owned by Pfizer for an implied equity value of $2.26 billion, or $18.50 per share, in cash. This represents a 118% premium to the 60-day weighted average price for Trillium.

Trillium's portfolio includes biologics that are designed to enhance the ability of patients' innate immune system to detect and destroy cancer cells. Its two lead molecules, TTI-622 and TTI-621, block the signal-regulatory protein α (SIRPα)–CD47 axis, which is emerging as a key immune checkpoint in hematological malignancies. TTI-622 and TTI-621 are novel, potentially best-in-class SIRPα-Fc fusion proteins that are currently in Phase 1b/2 development across several indications, with a focus on hematological malignancies.

"Today's announcement reinforces our commitment to pursue scientific breakthroughs with the addition of potentially best-in-class molecules to our innovative pipeline," said Andy Schmeltz, Global President & General Manager, Pfizer Oncology. "The proposed acquisition of Trillium builds on our strong track record of leadership in Oncology, enhancing our hematology portfolio as we strive to improve outcomes for people living with blood cancers around the globe. Our deep experience in understanding the science of blood cancers, along with the diverse knowledge base we have developed across our growing hematology portfolio of eight approved and investigational therapies, provide us with a foundation to advance these important potential medicines to patients who need them."

Hematological malignancies are cancers that affect the blood, bone marrow, and lymph nodes. This classification includes various types of leukemia, multiple

4

myeloma, and lymphoma. More than 1 million people worldwide were diagnosed with a blood cancer in 2020, representing almost 6% of all cancer diagnoses globally. In 2020, more than 700,000 people worldwide died from a form of blood cancer.

"We're delighted to announce Pfizer's proposed acquisition of Trillium. Today's announcement reflects Trillium's potentially best in class SIRPα–CD47 status and contribution to immuno-oncology," said Dr. Jan Skvarka, Chief Executive Officer of Trillium. "Trillium has the only known SIRPα–CD47 targeting molecules with clinically meaningful monotherapy responses as well as a strong basis for combination therapies, which is supported by preclinical evidence with a diverse set of therapeutic agents. With Pfizer's global reach and deep capabilities, we believe our programs will advance more quickly to the patients we've always aspired to serve. We believe this is a good outcome for patients and our shareholders."

In clinical studies to-date, TTI-622 and TTI-621 have demonstrated activity as monotherapy in relapsed or refractory lymphoid malignancies, including Diffuse Large B-cell Lymphoma (DLBCL), Peripheral T-cell lymphoma (PTCL), Follicular Lymphoma (FL), and other lymphoid malignancies. As of July 26, 2021, Phase 1 data for TTI-622 in 30 response-evaluable patients have shown deep and durable responses in heavily pretreated patients, including two complete responses (CRs), one lasting over 114 weeks, with responses ongoing. TTI-622 and TTI-621 are currently the only known CD47-targeted molecules that have demonstrated meaningful single agent activity and CRs in multiple hematological malignancies. Thus far, adverse events (AEs) reported with TTI-622 and TTI-621 have been manageable. Related Grade 3 and 4 AEs with TTI-622 were rare and limited to transient cytopenias. In particular, the molecules demonstrate minimal red blood cell binding and few reported cases of anemia, an observed risk with other CD47-targeted approaches. Further data are expected to be shared at a forthcoming medical conference.

"We are encouraged by the early clinical data for TTI-622 and TTI-621 monotherapy for patients with heavily pretreated lymphoid malignancies and early encouraging activity for TTI-622 in patients with multiple myeloma. Just as PD-1 and PD-L1 blockers have proven to be effective immuno-therapeutics for many solid tumors, the SIRPα-CD47 interaction defines a second key immune checkpoint for which disrupting agents are expected to become another important backbone immunotherapy for multiple types of cancer, especially hematological cancers," said Chris Boshoff, MD, PhD, Chief Development Officer, Oncology, Pfizer Global Product Development. "Utilizing Pfizer's leading research and global development capabilities, we plan to accelerate the clinical development of SIRPα fusion proteins as a potential new scientific breakthrough and explore combinations within our own portfolio and with innovative next-generation medicines for hematological malignancies."

In September 2020, as part of the Pfizer Breakthrough Growth Initiative (PBGI), Pfizer invested $25 million in Trillium and Jeff Settleman, Senior Vice President and Chief Scientific Officer of Pfizer's Oncology Research & Development Group, was named to Trillium's Scientific Advisory Board. Established in June 2020, PBGI's goal is to provide funding for scientific research as well as access to Pfizer's experts to ensure the continuity of clinical programs that could be of potential strategic interest for Pfizer. Pfizer has committed to providing up to $500 million in total funding to the PBGI.

**Additional Transaction Details**

The proposed acquisition of Trillium is to be completed by way of a statutory plan of arrangement under the *Business Corporations Act* (British Columbia) and subject to customary closing conditions, including approval of 66⅔% of the votes cast by Trillium shareholders, voting together as one class, at a special meeting of Trillium and approval of 66⅔% of the votes cast by Trillium shareholders and warrant holders, voting together as one class, at a special meeting of Trillium. Completion of the acquisition is also subject to court and regulatory approval, as well as certain other closing conditions customary for transactions of this nature.

Pfizer's financial advisors for the transaction are BofA Securities, Inc., with Ropes & Gray LLP and Norton Rose Fulbright Canada LLP acting as its legal advisors. Centerview Partners LLC served as Trillium's financial advisor, while Goodwin Procter LLP and Baker McKenzie LLP (Canada) served as its legal advisors.

\*   \*   \*

**About SIRPα/CD47**

Accumulating data suggest that the SIRPα–CD47 axis is a key immune checkpoint in hematologic malignancies, similar to the PD-L1 / PD-1 checkpoint for solid tumors. CD47 is a protein that is overexpressed in numerous cancer cells, and in general, high CD47 expression correlates with more aggressive disease and poorer clinical outcomes. SIRPα is an inhibitory receptor expressed on myeloid cells that binds to CD47, preventing the immune system from destroying cancer cells. Disruption of the CD47-SIRPα interaction has been proven to elicit tumor destruction through triggering of an innate immune response.

**About Pfizer Oncology**

At Pfizer Oncology, we are committed to advancing medicines wherever we believe we can make a meaningful difference in the lives of people living with cancer. Today, we have an industry-leading portfolio of 24 approved innovative cancer medicines and biosimilars across more than 30 indications, including breast, genitourinary, colorectal, blood and lung cancers, as well as melanoma.

\*       \*       \*

**About Trillium Therapeutics**

Trillium is an immuno-oncology company developing innovative therapies for the treatment of cancer. The company's two clinical programs, TTI-622 and TTI-621, target CD47, a "don't eat me" signal that cancer cells frequently use to evade the immune system.

For more information visit: www.trilliumtherapeutics.com.

19.     On September 27, 2021, Defendants caused to be filed with the SEC a Definitive Proxy Statement (the "Proxy Statement") under the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

20.     The Proxy Statement, which recommends that Trillium shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Trillium's financial projections; (ii) the financial analyses performed by Trillium's financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Company insiders.

21.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board and Reasons for the Arrangement; (ii) Fairness Opinion of Centerview Partners LLC; (iii) Certain Prospective Financial Information; and (iv) Background of the Arrangement.

22.     Unless and until the material misstatements and omissions (referenced below) are remedied before the October 26, 2021 shareholder vote on the Proposed Transaction, Trillium shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Trillium's Financial Projections

23. The Proxy Statement omits material information concerning Trillium's financial projections.

24. With respect to Trillium's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Total Net Revenue, (ii) Gross Profit, (iii) Total R&D Expense, and (iv) Total SG&A Expense; and (2) a reconciliation of all non-GAAP to GAAP metrics.

25. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

26. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP.

27. The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Centerview's Financial Analyses

28. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Centerview.

29. With respect to Centerview's "*Selected Public Company Analysis*," the Proxy Statement fails to disclose: (1) the individual multiples and financial metrics of each company Centerview observed in its analysis; and (2) the specific inputs and assumptions underlying the reference range of Enterprise Values for Trillium.

30. With respect to Centerview's "*Selected Precedent Transaction Analysis*," the Proxy Statement fails to disclose: (1) the operational, business, and financial characteristics Centerview considered in selecting the transactions; (2) the individual multiples and financial metrics of each transaction Centerview observed in its analysis; and (3) the closing dates of the transactions.

31. The Proxy Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*": (1) the terminal values for the Company; (2) the individual inputs and assumptions underlying the (i) assumption that unlevered free cash flows would decline in perpetuity after December 31, 2042 at a free cash flow decline of 40% year-on-year after 2042, and (ii) discount rates ranging from 11% to 13%; (3) Trillium's estimated future losses; and (4) the number of fully-diluted outstanding shares of Trillium common stock. This information is even more material for shareholders to be able to assess the advisor's analysis in light of the fact that Centerview derived implied values of $11.50 to $15.25 per share of Trillium stock, as compared to the merger consideration of $18.50 per share.

32. With respect to Centerview's "*Premiums Paid Analysis*," the Proxy Statement fails to disclose: (1) the transactions observed by Centerview in its analysis and a description explaining why those transactions were selected; and (2) the individual premiums paid therein.

33. With respect to Centerview's "*Analyst Price Target Analysis*," the Proxy Statement fails to disclose: (1) the individual price targets observed by Centerview in its analysis; and (2) the sources thereof.

34. The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Centerview's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, the Company's shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction.

35. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

36. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

37. In August 2021, the Compensation Committee of the Board held a meeting and discussed potential retention and severance programs for Trillium employees in the event a transaction was to proceed. The Board discussed these and other employee retention and annual bonus matters.

38. That same month, Trillium communicated with Pfizer certain proposals for retention and severance programs for Trillium employees, consisting of a recognition and retention pool of $2.0 million and severance up to twelve months of base salary and benefits continuation, as well as the proposed treatment of 2021 annual bonuses.

39. The Proxy Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

40. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

44. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use

of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

45. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

46. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

47. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

48. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

52. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the

Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 15, 2021					Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600

14

Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*